UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE GUTIERREZ, et al., | CASE NO. C21-682 RSM |
| Plaintiffs, | ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY COLLECTIVE ACTION CERTIFICATION |
| v. | |
| E&E FOODS, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion for Preliminary Collective Action Certification. Dkt. #12. Plaintiffs' motion seeks preliminary approval to pursue this as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and for authorization to send a notice of the action to Defendants' past and present employees who may be similarly situated. *Id.* Defendants oppose the motion on the basis that all employees are not similarly situated and that the form of Plaintiffs' proposed notice and the way Plaintiffs will provide notice are improper. Dkt. #21. Having considered the matter, the Court grants the motion in part and denies the motion in part.

Plaintiffs worked for Defendants on the M/V CAPE CREIG fish-processing factory vessel. Dkt. #17 at ¶¶ 4–5  They now maintain that Defendants' policy of "no fish, no pay" violates the FLSA. *Id.* at ¶¶ 5–7. Under the "no fish, no pay" policy, Plaintiffs allege that they

ORDER – 1

1  "were on standby 16 hours a day, 7 days a week, waiting to work upon short notice when fish

2  were delivered to process by catcher boats." *Id.* at ¶ 6.  They maintain that they should have been

3  paid minimum and overtime wages during the time they "were required to wait on the vessel and

4  wait for deliveries." *Id.* at ¶ 7.  Plaintiffs believe that approximately fifty processors, similarly

5  situated to themselves, were employed on the vessel each summer processing season between

6  2018 and 2021. *Id.* at ¶ 10.

7      A.  **Preliminary Approval of Collective Action**

8          The FLSA permits plaintiffs to pursue "collective actions:"

9          An action to recover the liability prescribed in the preceding sentences may be
           maintained against any employer . . . in any Federal or State court of competent
10         jurisdiction by any one or more employees for and in behalf of himself or
           themselves and other employees similarly situated.  No employee shall be a party
11         plaintiff to any such action unless he gives his consent in writing to become such
           a party and such consent is filed in the court in which such action is brought.
12

13  29 U.S.C. § 216(b).  Collective action "serves to (a) reduce the burden on plaintiffs through the

14  pooling of resources and (b) make efficient use of judicial resources by resolving common issues

15  of law and fact together." *Bolding v. Banner Bank*, Case No. 17-cv-601-RSL, 2017 WL 6406136

16  (W.D. Wash. 2017) (citing *Hoffman-La Rouche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

17          Determining whether to certify a FLSA collective action as involving similarly situated

18  plaintiffs and common issues of law and fact is within the discretion of the Court.  *Campbell v.*

19  *City of Los Angeles*, 903 F.3d 1090, 1110 (2018); *Bollinger v. Residential Cap., LLC*,

20  761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011).  Plaintiffs are similarly situated, "and may

21  proceed in a collective, to the extent they share a similar issue of law or fact material to the

22  disposition of their FLSA claims." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918,

23  948 (9th Cir. 2019) (quoting *Campbell*, 903 F.3d at 1117).  The standard of proof at the pleading

24  stage is lenient and "loosely akin to a plausibility standard." *Campbell*, 903 F3d at 1109; *In re*

ORDER – 2

1  *Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1070–71 (N.D. Cal. 2004) (citing *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004)).

Here, the Court is satisfied by the evidence and legal argument presented by Plaintiffs, and Defendants do not seriously dispute that this action can proceed collectively. Defendants' objections relate to the difficult distinction between being "engaged to wait" and "waiting to be engaged," the importance of contractual language in drawing that distinction, and a lack of proof that the same contract forms used in 2018 and 2019 were utilized in 2020 and 2021. Dkt. #21 at 9–10. But Plaintiffs submit sufficient evidence, for this stage of the proceedings, to demonstrate that similar contract language was likely used in all the years at issue. *See* Dkt. #16 at 4–9 (attaching identical contracts used for 2018 and 2019 that could similarly be modified for use in 2020 and 2021). Notably, Defendants do not present any evidence of material changes in their contracts or policy in 2020 and 2021. Rather, they present evidence that their "no fish, no pay" policy is effectively the "industry standard," in fact supporting the conclusion that the contractual language and policy were unlikely to change for the 2020 and 2021 fishing seasons. *See* Dkts. ##23, 23-1, 23-2, 23-3, 23-4, 23-5, 23-6, 23-7. The Court finds that Defendants' objections are more appropriately made and considered after discovery. *See Campbell*, 903 F.3d at 1100 (9th Cir. 2018) (endorsing pleading stage "precertification" and post-discovery "decertification" process for considering collective action).

**B. Propriety of Proposed Notice and Notice Process**

The primary purpose of a motion for preliminary collective action certification is authorization to disseminate "a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* at 1109 (citing 1 MCLAUGHLIN ON CLASS ACTIONS § 2:16 (14th ed. 2017)). In this case, Defendants raise several challenges to Plaintiffs' proposed notice and the notice process.

ORDER – 3

**1. Defendants' Production of Employee Information**

So that they may provide notice to all similarly situated putative collective action members, Plaintiffs request that the Court order Defendants to produce full names, last known addresses, telephone numbers, dates and locations of employment, and dates of birth for relevant employees. Dkt. #12 at 5–6. Defendants object to providing additional information beyond full names and last known addresses.[1] Dkt. #21 at 11–12.

Plaintiffs present evidence that they, and Defendants' other employees, are often seasonal and relatively transient, with a majority residing outside of Washington. Dkt. #14 at ¶ 6; *see also* Dkt. #12 at 6. Additionally, many do not speak English as their first language. Dkt. #14 at ¶ 4. As a result, Plaintiffs have a primary concern in having sufficient information to get notice to all putative collective action members. Plaintiffs explain that dates of birth are "useful in tracking changes of address." Dkt. #12 at 6 n.1. Further, Plaintiffs indicate that they need telephone numbers because they anticipate that notice by text-message may be the best form of notice for many putative plaintiffs. Dkt. #26 at 3–4.

The Court shares Plaintiffs' concerns related to adequate notice. However, Plaintiffs' need for dates of birth is currently speculative.[2] Similarly, Plaintiffs have not established their need for dates and locations of employment and the information's import is not immediately apparent to the Court. Lastly, while text-messages may be the best manner of providing notice to many putative members, Plaintiffs give no indication of the contents of any such notice. The

---

[1] Defendants further object to providing contact information for employees that did not work on M/V CAPE GREIG. Dkt. #21 at 13. Plaintiffs do not address the issue and therefore concede any argument that they should be entitled to information for employees other than those that worked on the M/V CAPE GREIG. *See generally* Dkt. #26.

[2] Additionally, Plaintiffs indicate a willingness to withdraw their request for dates of birth and dates of employment. Dkt. #26 at 4 n.2.

ORDER – 4

Court will therefore deny the requests at this time. But nothing in this Order shall preclude Plaintiffs from seeking additional information should it become necessary to effect notice.

### 2. Notice Forms

Plaintiffs have filed the proposed notice and opt-in forms in both English and Spanish. See Dkts. ##13-1, 13-2. The sole issue as to the forms is Defendants' request that the notice inform putative members that they may be responsible for litigation costs if the action is unsuccessful. Dkt. #21 at 17–18. There are numerous authorities supporting both Defendants' and Plaintiffs' positions. *Compare* Dkt. #21 at 18 (collecting cases favorable to Defendants) *with* Dkt. #26 at 5 (collecting cases favorable to Plaintiffs). Here, the Court finds that the likelihood of financial exposure is outweighed by the potential chilling effect caused by including the information in the notice. The Court therefore does not order Plaintiffs to alter the proposed notices in this regard.

### 3. Notice Process

Defendants object that Plaintiffs have not provided sufficient indication of how they will handle the notice process and request that Plaintiffs be ordered to utilize a third-party administrator. Dkt. #21 at 13–14. Plaintiffs respond that counsel will administer the notice process, that other courts have allowed counsel to administer the notice process, that the class of potential members is small, and that the associated costs would be prohibitive. Dkt. #26 at 4–5. The Court agrees that the use of a third-party administrator is an unnecessary expense in this case and denies Defendants' request.

### 4. Hand Delivery of Notice to Current Employees

Plaintiffs initially requested that the Court order Defendants to hand deliver copies of the notices to their current processor employees. Dkt. #12 at 6. Defendants objected. Dkt. #21 at 14–17. However, Plaintiffs have subsequently withdrawn that request. Dkt. #26 at 5.

ORDER – 5

## C. Conclusion

Accordingly, and having considered Plaintiffs' motion, the briefing and evidence submitted by the parties, and the remainder of the record, the Court finds and ORDERS:

1. Plaintiffs' Motion for Preliminary Collective Action Certification (Dkt. #12) is GRANTED in part and DENIED in part as set forth in this Order.
2. The Court preliminarily certifies a class of: "All people who worked as seafood processors for Defendants on the M/V CAPE GRIEG at any time between 2018 and the present."
3. The Court APPROVES the proposed notices.
4. Defendants shall, within ten (10) days of this Order, produce an electronic list of all persons who fit within the preliminary class, to include each person's first and last name and last known address.
5. Plaintiffs shall cause notices, in a form substantially similar to the forms approved, to be mailed, within thirty (30) days of receipt of the class list, to all potential class members.
6. Potential class members shall have ninety (90) days from the date of mailing to submit their consent to join this action.

DATED this 17th day of December, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE